Ward *v.* Woodburn.

[NEW YORK GENERAL TERM, May 3, 1858. *Davies, Clerke* and *Ingraham, Justices.*]

---

WARD & PARKER *vs.* WOODBURN, FRANKLIN & SCOTT.

Where, in an action against three, for the recovery of personal property, it appears that there is no issue involving any thing personal to either one of the defendants, but the only defense made is a joint defense, the defendants cannot be witnesses for each other.

It would be an idle ceremony to swear defendants as witnesses, where it appears from the pleadings that neither of them can be allowed to testify to any matter in issue in the cause. Per INGRAHAM, J.

A release, from two of three partners to the third, of their interest in the partnership effects, taken with full knowledge of, and subject to, all the equities existing between the parties, is not such a sale as will deprive a vendor of his right of action for goods which he alleges the firm have fraudulently obtained from him.

Vendors sought to recover the possession of goods, on the ground of a false representation, made by the purchasers' agent, at the time of the purchase, in August, 1853, that the purchasers were worth $40,000. The proof of the falsity of the statement was, that the purchasers failed, in October, and made an assignment in January, following, with only a small amount of assets after paying their confidential debts. The agent swore that he made the statement without any direction from his principals, but believing it to be true. *Held* that this was not sufficient proof of an intended fraud on the part of the agent.

Ward *v.* Woodburn.

APPEAL from an order made at a special term, refusing a new trial, and from a judgment in favor of the plaintiffs, rendered on the last count of the complaint. The action was brought to recover the possession of personal property, with damages for detention thereof. The plaintiffs recovered only on the third count. In that count they alleged that on the 18th of August, 1853, the defendants procured goods from the plaintiffs by fraudulent representations. The defendants answered separately, traversing the whole complaint, and claiming property in the goods, and denying possession of the goods at the time the action was brought. The action was tried at the New York circuit, in May, 1856, before Mr. Justice DAVIES and a jury. On the trial the plaintiffs proved two sales of goods, one on the 10th and the other on the 18th August. No representations preceding the sale of 10th August being shown, that demand was rejected by the court, and the case proceeded on the sale of 18th August alone. As to the latter sale, the evidence was as follows: The sale was made by a clerk of the plaintiffs to a clerk of the defendants, on the 18th August, 1853, and amounted to $1246.18. A bill was sent in, stating the terms thus: "Terms: Note to your own order at 8 months." On the 4th October, 1853, the defendants' note for this bill, at 8 months, dated 18th August, 1853, was received by the plaintiffs, and they heard of the defendants' failure a few days afterwards. The representations testified to by the plaintiffs' clerk, were to the effect that the defendants were solvent, and worth $40,000 above their debts. It appeared, also, that on or about March, 1853, one of the defendants stated to another firm that the defendants were worth $40,000, and in February or March, 1853, he stated to another firm that the defendants were worth $50,000 or $60,000. It also appeared that in November or December, 1852, one of the defendants obtained an extension, and then thought he should be able to meet his engagements; and that after the failure the defendants offered to pay their confidential debts and 40

per cent to general creditors; and that the assignment is likely to pay 20 per cent to the general creditors. The plaintiffs put in evidence the assignment of the effects of the firm, dated January 4, 1854. The defendants' clerk, who made the purchase, testified that he made the representations without authority from the defendants, and believed them to be correct, when he made them. The defendants Woodburn and Scott offered in evidence the deposition of the defendant Franklin, taken *de bene esse*. This was excluded, on the ground of the incompetency of one defendant as a witness for the other defendants; to which ruling exception was taken. The defendants Woodburn and Scott were severally offered as witnesses by their co-defendants, and excluded for incompetency, and exceptions to such rulings were taken. It was attempted to be shown that the defendants Franklin and Scott had, on the 10th day of October, 1853, and before the commencement of this suit, assigned to their copartner, Woodburn, all their interest in the goods, and had thereby exonerated themselves from liability. The plaintiffs recovered a verdict for $1248, for the value of the property, and $182.74 damages for the detention thereof.

*Chas. Tracy*, for the appellants. I. The circuit judge erred in excluding the several defendants as witnesses for their co-defendants. Each was a competent witness for the other defendants. (*Code,* § 397. *Beal* v. *Finch,* 1 *Kernan,* 128. *Dean* v. *Thornton,* 3 *id.* 266. *Lefever* v. *Brigham,* 10 *How.* 385. *Gardner* v. *Finley,* 19 *Barb.* 317.)

II. The refusal to charge as requested was erroneous. The assignment made by Woodburn recites the fact that Franklin and Scott sold their interests in the firm's property to Woodburn, the 10th October, 1853. The action was brought on the same day. The plaintiffs put the assignment in evidence, and there was no proof that the action was brought before the transfer was made. This action, for the recovery of possession of personal property, will not lie against Franklin or

Scott, unless brought before they parted with the property and lost the power to make delivery to the plaintiffs. (*Roberts* v. *Randel*, 3 *Sandf. S. C. R.* 707. *Brockway* v. *Burnap*, 12 *Barb.* 347. *S. C.* 16 *id.* 309.)

III. The verdict was against evidence. The case contains all the evidence. The jury were not warranted in finding that intentional deception had been practised by the defendants. A suspension of payments in October, followed by an assignment in January, does not authorize an inference of insolvency in the previous August, much less of a knowledge by the defendants of such a condition.

*Truman Smith*, for the plaintiffs. To the legality of the proceedings at the circuit, only two objections are taken: I. It is insisted that the defendants Franklin and Scott had exonerated themselves from all liability, by assigning to their copartner, Woodburn, all their right and interest in these goods before Ward & Parker rescinded the sale of the 18th of August and demanded back the goods. To this we answer: (1.) It does not appear that Franklin and Scott sold and assigned to Woodburn on the 10th day of October, the day of rescission of the sale by Ward & Parker. The only evidence in the case on this point is a recital in the indenture of assignment, executed by Woodburn to Woodruff, and dated January 4th, A. D. 1854, wherein it is stated that they, Franklin and Scott, had sold their interest to Woodburn, by an instrument *dated* on the 10th day of October, and not that it was *in fact executed and delivered on that day.* (2.) The instrument, whenever executed, only "sold, assigned, transferred and made over" to Woodburn "all and singular the goods, chattels, credits and effects" of the late firm of Woodburn & Co. They did not sell these goods; they were "the goods, chattels and effects" of Ward & Parker, and did not belong to Woodburn & Co. (3.) The assignment by Franklin and Scott to Woodburn was a private affair of their own, of which Ward & Parker had no notice. It would seem to

be a singular idea that two of three joint tort feasors con-
cerned in defrauding another of his estates can exonerate
themselves from all liability by secretly transferring their in-
terest in the plunder to their associate in fraud. If such an
absurdity could be recognized for a moment, the court at least
should hold that notice of such transfer should be given to
the party injured. (4.) The most that can be said is that the
transfer by Franklin and Scott, and the rescission by Ward
& Parker, both took place on the same day, (October 10th.)
There are no grounds for presuming priority in favor of one
transaction any more than there is in favor of the other. If
a transfer by Franklin and Scott to Woodburn is, as to them,
a defense, they must prove the priority, and not call on the
court to help them out by presumptions. (5.) But the de-
fense itself is an absurdity. Joint participators in fraud can-
not obtain an exoneration from responsibility by any dealing
among themselves with the subject of that fraud. By receiv-
ing the goods and holding them in opposition to the demand
and requisition of Ward & Parker, they made themselves
jointly liable for the imposition practiced by their clerk Howe.
Besides there is evidence that the falsehoods of Howe were
concerted between him and one at least of the members of the
firm. (6.) Independent of all knowledge of, or actual partici-
pation in the fraud, it is a settled rule of law that the prin-
cipal is liable *civiliter* for the fraud or misconduct of his
agent. "The authority to purchase is authority to make the
necessary representations as to the credit and solvency of the
principal." (*Hunter* v. *Hudson River Iron and Machine
Co.*, 20 *Barb.* 493, 506.)

II. In this case the defendants were not competent wit-
nesses for each other, for (1.) It is not a case of *pure tort,* as
in *Beal* v. *Finch and others,* (1 *Kern.* 128.) (2.) It is a case
of tort arising *ex contractu.* The defendants are sued for
goods which their agent, Howe, purchased and obtained from
the plaintiffs by false and fraudulent representations as to the
solvency of the defendants. Whatever either defendant might

Ward *v.* Woodburn.

be compelled to pay on any judgment that could be rendered would be chargeable against all, in the adjustment of the concerns of Woodburn & Co. In the language of the court in *Dean* v. *Thornton & Dutton*, (3 *Kern*. 266,) "in this matter they were jointly interested, because the proof which would exonerate one would necessarily discharge the other, provided it was receivable in behalf of both."

III. But if it is said that the objection to the competency of the defendants for each other was taken prematurely; that they were prima facie witnesses and should have been sworn, and that the plaintiffs could object only to their speaking to matters in which the defendants had a joint interest; to this we answer: (1.) This ground of exception is not applicable to the deposition of Franklin, which relates wholly to matters in which the defendants were jointly interested. His statements tend as much to his own exoneration, as they do to the defense of his co-defendants. (2.) With respect to the other defendants it is to be observed that § 399 of the code makes them prima facie inadmissible, and it is insisted that if there were any special grounds rendering them, or either of them admissible under §·397, it was the duty of the defendant offering his co-defendants to state those grounds. They were offered as witnesses generally; as such they were clearly inadmissible. (3.) But the defendants were jointly interested in all the issues made in the case. The proof of the matters involved in these issues tended to subject or to exonerate all the defendants alike. The case falls clearly within the principle of *Dean* v. *Thornton & Dutton*, (3 *Kernan*, 266.) (4.) Though the defendants in form answered separately, yet all their allegations, whether affirmative or negative, are in substance joint. Neither sets up any separate matter on which he has a right to examine his co-defendant. The issues are such as to render the defendants incompetent as witnesses for each other. (5.) The court will not set aside the verdict and grant a new trial merely because the defendants were not sworn as witnesses, when it is apparent that their testimony was not mutually

available in defense of each other. Substantial justice has been done as between those parties, and therefore the verdict and judgment should stand.

*By the Court,* INGRAHAM, J. This action is for the recovery of personal property. The goods were bought by the defendants, who were partners in business, on the 18th August, 1853. The purchase was made by their agent, who represented, at the time of the purchase, that the defendants' house was worth $40,000 over and above their liabilities, and on this statement credit was given. The agent, Mr. Howe, on his examination stated that he made the purchase; that he had not been authorized to make statements respecting the affairs of the firm; that he made the representations on common report, and he thought the defendants worth the amount stated. The evidence to prove that the statements were false showed that the defendants failed early in October, 1853, and the assignment was made 4th January, 1854, which only sufficed to pay the preferred debts and a small balance over.

Upon the trial, the defendants were offered as witnesses for each other, and excluded by the court. Under the decision in *Beal* v. *Finch*, (1 *Kernan*, 128,) it was erroneous to exclude the party when offered, but his examination is to be restricted to questions which do not relate to matters wherein he was personally interested. The case of *Dean* v. *Thornton*, (3 *Kernan*, 266,) remedied the difficulty which followed from that decision. In that case it was held that parties might be thus excluded as witnesses, when the matter to which each defendant was offered to be examined was one in which they were jointly interested. If therefore it appears that there is no issue involving any thing personal to one of the defendants, but all the defense made is a joint defense, there is no error in the exclusion of the witnesses.

The answers in this case, although separate, all agree in establishing that the only defense the defendants had was a joint one; that there was nothing personal to either defend-

Ward *v.* Woodburn.

ant, and therefore that there was no subject on which either of the defendants could be examined that he was not jointly interested in with the other defendants. It would have been an idle ceremony to swear the defendants as witnesses, when it appeared from the pleadings that neither of them could be allowed to testify to any matter in issue in the cause.

The judge was requested to charge the jury that the action would not lie, if the suit was not brought before the sale by Scott & Franklin to Woodburn; which he refused to do. There was no evidence to show any such sale, except a recital in an assignment by Woodburn, which I should hardly think sufficient evidence of such a fact. But if it had been proved, it furnished no ground for such a charge. If such an assignment was made it was only a release from one partner to another of his interest in the partnership effects, taken with full knowledge of, and subject to, all the equities between the parties; and it was not such a sale as could deprive the plaintiff of his right of action for the goods which he alleged the defendants had fraudulently obtained from him, even under the decision of the superior court in *Roberts* v. *Randall,* (3 *Sand.* 707.) But upon a review of this question in the supreme court, that case has been substantially overruled, and it has been held that the present remedy for the recovery of personal property is as full, general and complete as replevin was under the revised statutes, and that the action will lie although the defendant before suit has wrongfully parted with the possession. (*Brockway* v. *Burnap,* 16 *Barb.* 309. *Drake* v. *Wakefield,* 11 *How. P. R.* 106.)

This disposes of the questions arising on the bill of exceptions, and neither exception being well taken, the plaintiff is entitled to judgment thereon.

Upon the case, another question arises, viz: whether the verdict is against the evidence. The false representation alleged by the plaintiff was the statement that in August, 1853, the defendants were worth $40,000. The proof of such falsity is their failure in October, and making an assignment

in January following, with a small amount of assets beyond the payment of the confidential debts. Without some further proof. I am at a loss to see how such evidence makes out an intended fraud on the part of the agent, at the time he made the purchase. His testimony shows that the defendants never had directed him to make the statement; that he supposed it to be true; and that he learned it from common ·report and from the persons who were references for the defendants. It has not been of late unusual for merchants, and corporate bodies, within a period of two months, to find themselves reduced to inability to pay their debts, from the possession of what they at the time supposed to be a much larger fortune. The mere fact of failure within two months thereafter will not furnish sufficient evidence to establish a fraud against an agent who made such a statement without direction from his principals. Upon this point I think the 'jury have erred, and the verdict should be set aside.

When a new trial is granted as being against the evidence, the new trial can only be ordered on payment of costs.